UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTINA CARRENO MARTIN,<br><br>                    Plaintiff,<br><br>          v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social<br>Security,<br><br>                    Defendant. | ) Case No. CV-13-5653-PJW<br>)<br>)<br>)<br>) MEMORANDUM OPINION AND ORDER<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## I.   INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying her application for Disability Insurance Benefits ("DIB").  She claims that the Administrative Law Judge ("ALJ") erred when she rejected the treating doctors' opinions and when she found that Plaintiff was not credible.  For the reasons explained below, the Court finds that the ALJ erred and remands the case to the Agency for further proceedings.

## II.   SUMMARY OF FACTS AND PROCEEDINGS

In May 2009, Plaintiff applied for DIB, alleging that she had been unable to work since January 2009, due to various

physical and psychological/emotional impairments, including bipolar disorder, depression, anxiety, headaches, fibromyalgia, sleep apnea, and knee, back, and shoulder pain. (Administrative Record ("AR") 107-08, 124.) The Agency denied the applications initially and on reconsideration. Plaintiff then requested and was granted a hearing before an ALJ. (AR 94-99.) On August 22, 2011, she appeared with counsel and testified at the hearing. (AR 58-77.) The ALJ subsequently issued a decision denying benefits. (AR 23-30.) Plaintiff appealed to the Appeals Council, which denied review. (AR 1-3.) She then commenced this action.

## III.   ANALYSIS

A. The ALJ's Rejection of the Treating Doctors' Opinions

The ALJ rejected the opinions of Plaintiff's treating doctors and adopted, instead, the opinions of the reviewing doctors. Plaintiff claims that the ALJ erred in doing so. For the following reasons, the Court concludes that, at least with regard to Plaintiff's treating psychiatrist, the ALJ erred and remand is required for further consideration.

ALJs are tasked with resolving conflicts in the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Generally speaking, three types of doctors supply that evidence: treating doctors, examining doctors, and reviewing doctors. All things being equal, treating doctors' opinions are entitled to the greatest weight because treating doctors are hired to cure and have more opportunity to know and observe the patient. *Id.* at 1041; *see also* 20 C.F.R. 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating

2

sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations"). Examining doctors are next on the list, followed by reviewing doctors. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). ALJs, however, are not required to merely accept the opinion of a treating doctor and, where contradicted, may reject it for specific and legitimate reasons that are supported by substantial evidence in the record. *Id*. at 830. On the other hand, where the treating doctor's opinion is uncontradicted, the ALJ can only reject it for clear and convincing reasons. *Id*.

     i.  <u>Dr. Ruths</u>

In January 2009, after experiencing acute depression and feeling suicidal, Plaintiff checked herself into a local hospital for treatment. (AR 175-83.) She was treated by psychiatrist Steven M. Ruths, who diagnosed her with bipolar disorder and treated her with drugs and therapy. (AR 175-83.) After five days, she was discharged to an aftercare facility for another week. (AR 176-77.)

From February 2009 to June 2009, Dr. Ruths saw Plaintiff on a monthly and sometimes twice monthly basis. (AR 261-85, 386-417.) During these appointments, he questioned her about how she was doing and determined what medications she should be taking in order to treat her symptoms. (AR 261-85, 386-417.)

In June 2009, Dr. Ruths filled out a "Mental Disorder Questionnaire Form," summarizing Plaintiff's condition and prognosis. (AR 200-04.) In a nutshell, he found that Plaintiff was doing fairly well. Her mental status was within normal limits except for her concentration, which was impaired, and her ability to adapt to work or work-like situations, which was mildly impaired. (AR 203.)

Dr. Ruths continued to treat Plaintiff from June 2009 until July 2011. In August 2011, he filled out another form, again summarizing Plaintiff's condition, but this time he reported that she was not doing so well. (AR 418-22.) He explained that Plaintiff had limited functioning and was not capable of working due to her psychological ailments and the symptoms that they caused. (AR 418-22.)

The ALJ accepted Dr. Ruths' 2009 report and rejected the 2011 one. (AR 26-27.) He found that Dr. Ruths' treatment notes did not support his 2011 findings because they did not show "symptoms or complaints supporting such a restrictive residual functional capacity." (AR 27.) Plaintiff contends that the ALJ erred in rejecting Dr. Ruths' 2011 report. The Agency disagrees. For the following reasons, the Court sides with Plaintiff.

The threshold issue in resolving this conflict is whether Dr. Ruths' 2011 opinion was contradicted or not. If it was, the ALJ only had to provide specific and legitimate reasons for rejecting it. If not, she was required to provide clear and convincing reasons.

In July 2009, reviewing psychologist Preston Davis reviewed Dr. Ruths' records and his June 2009 opinion and concluded that, based on that opinion, by January 2010, Plaintiff would return to her pre-January 2009 level and be able to work.  (AR 224.) Thus, Dr. Davis' July 2009 opinion was consistent with Dr. Ruths' June 2009 opinion.

The opinion at issue here, however, is Dr. Ruths' August 2011 opinion.  It does not appear that any doctor ever reviewed it or any of Dr. Ruths' records after July 2009.  Nor did any psychiatrist or psychologist, other than Dr. Ruths, weigh in on Plaintiff's condition after July 2009.  To the extent that Plaintiff's primary care physician offered opinions regarding Plaintiff's psychiatric condition, it would appear that these opinions were consistent with Dr. Ruths' opinion.

Thus, Dr. Ruths' August 2011 opinion is uncontradicted. That being the case, in order to uphold the ALJ's rejection of it, the Court must find that the ALJ's reason for rejecting it is clear and convincing and supported by substantial evidence in the record.  *See Lester*, 81 F.3d at 830.  As the Agency points out, under this standard, the Court would have to be convinced that it was highly probable or reasonably certain that the ALJ was right in order to affirm.  (Joint Stip. at 14, citing *Moncada-Vega v. Holder*, 718 F.3d 1075, 1083 n.5 (9th Cir. 2013)).

The medical charts from Dr. Ruths' office visits with Plaintiff are included in the record.  (AR 262-85, 386-417.) They consist of pre-printed, medical chart forms that contain lines for the doctor to fill in the patient's "interval history

(signs, symptoms, compliance)" followed by 65 boxes the doctor can check to record various "pertinent abnormalities." Comparing the chart notes from Plaintiff's visits before the June 2009 report--in which Dr. Ruths concluded that Plaintiff was doing fairly well--with the chart notes following the June 2009 report and preceding the August 2011 report--in which Dr. Ruths opined that Plaintiff was seriously impaired--it is difficult to discern a measurable difference that would support such a drastic change in Dr. Ruths' opinions.  For example, Dr. Ruths found in 2009 that Plaintiff's intellectual functioning/ sensorium was within normal limits.  (AR 201.)  In 2011, he found that Plaintiff exhibited signs and symptoms of incoherence.  (AR 419.)  But there is nothing in Dr. Ruths' treatment notes after June 2009 that suggests that Plaintiff was incoherent or that her coherence had changed between January 2009 and August 2011.  Dr. Ruths never checked any of the boxes on the pre-printed form to indicate that Plaintiff was incoherent.  (AR 386-409.)  Nor did he record in his notes on the form that she was.  (AR 386-409.)  In fact, the notes, though cryptic, suggest that Plaintiff was completely coherent and able to communicate with him at all times throughout the treatment period.  (AR 386-409.)

As another example, in the 2011 form, Dr. Ruths reported that Plaintiff's medications caused "mild sedation."  (AR 418.) Yet, he never noted this in any of his chart notes.  To the contrary, when he made a notation regarding side effects, he consistently reported that there were none.  (AR 386-409.)

These inconsistencies seem to support the ALJ's finding that Dr. Ruths' records did not support his August 2011 opinion.

But the Court cannot so easily dissect the other entries made by Dr. Ruths in the 2011 report.  For example, he noted that Plaintiff exhibited "apprehensive expectation."  (AR 419.) Whatever this term means, it could be consistent with his view as noted in the treatment notes that she often experienced anxiety.  Or maybe it refers to something totally different. The same problem exists for Dr. Ruths' observation that Plaintiff suffered from decreased energy, feelings of guilt or worthlessness, memory impairment, etc.  (AR 419.)  These changes could be due to changes in Plaintiff's condition or could be the result of Dr. Ruths using a different form in 2011 than he did in 2009.  It is also possible that Dr. Ruths was simply mistaken in his evaluation.  The Court cannot divine the answer by examining the record.  One of the reasons for this difficulty is that none of the other doctors reviewed Dr. Ruths' treatment notes after July 2009 or his 2011 report.  And it is difficult for the Court on its own to compare the records and the 2011 report and come to a firm conclusion that they are inconsistent.

Though the Court might be inclined to affirm the ALJ's decision under a more relaxed standard, it cannot under the heightened standard applicable here, i.e., the clear and convincing standard.  It is not clear to the Court that Dr. Ruths' 2011 opinion is unsupported by his treatment notes nor is the Court convinced that the ALJ's summary rejection of the 2011 opinion is supported by substantial evidence in the record. Further, in the absence of Dr. Ruths' opinion, there is no

medical opinion regarding Plaintiff's psychological condition after June 2009, despite the fact that the ALJ's decision was issued in September 2011 and Plaintiff experienced what can be fairly characterized as some horrific events after June 2009.[1]

For these reasons, the ALJ's decision to reject Dr. Ruths' August 2011 opinion is remanded to the Agency for further consideration.  On remand, the ALJ is free to consult with other doctors to review the medical records or to examine the Plaintiff and offer opinions as to the validity of Dr. Ruths' opinion as well as to Plaintiff's mental capabilities.  The ALJ may also re-contact Dr. Ruths if she feels that that is warranted.

### ii.  Therapist Matzke

Plaintiff contends that the ALJ also improperly rejected therapist Tamara Matzke's opinion.  Using the same form that Dr. Ruths used in August 2011 to set forth his opinion, Ms. Matzke reported in August 2011 that Plaintiff was even more severely impaired than did Dr. Ruths.  (AR 423-27.)  The ALJ rejected Ms.

---

[1] The record reflects that Plaintiff experienced continual ups and downs throughout the course of her treatment with Dr. Ruths.  In 2010, she learned that her husband had fathered their daughter's child.  (AR 68-69, 71-72.)  She reported this to Dr. Ruths and told him that she was "blown away" by the news.  (AR 268.)  Yet, less than a month later, Plaintiff reported to Dr. Ruths that "things are going pretty well."  (AR 265.) Plaintiff's husband was sent to prison and her daughter ran away.  (AR 264.)  Plaintiff's reaction as recorded by Dr. Ruths was that her home was now calm and that she was relieved.  (AR 264, 395.)  Plaintiff later lost her home to foreclosure and became homeless along with her three children.  (AR 390-91.) But six months later, in April 2011, she told Dr. Ruths that she had found a job and that things were improving.  (AR 388.)

Matzke's opinion because her treatment notes did not "show symptoms or complaints supporting such a restrictive residual functional capacity." (AR 27.)

Because Ms. Matzke is a therapist, the ALJ needed only germane reasons to discount her opinion. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The fact that Ms. Matzke's treatment notes did not support her opinion was sufficient under this standard. *See, e.g., Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (upholding ALJ's rejection of doctor's opinion because it was not supported by doctor's treatment notes). A review of the record supports the ALJ's finding that Ms. Matzke's records did not support her dire view. Ms. Matzke reportedly treated Plaintiff on a weekly/bi-monthly basis between January 2010 and August 2011, though she pointed out that the treatment had been sporadic. (AR 423.) Yet the treatment notes that she provided were only five pages long and appear to have been prepared in connection with just three appointments. (AR 434-38.) Further, they are comprised almost entirely of summaries of what Plaintiff told Ms. Matzke was going on in her life at the time of her appointment, including her husband's involvement with their daughter and Plaintiff's attempts to find a new place to live. (AR 434-38.) For this reason, the ALJ's rejection of Ms. Matzke's opinion will not be disturbed.

iii. <u>Dr. Beamer</u>

Dr. Thomas L. Beamer was Plaintiff's primary care physician for 16 years. He submitted a residual functional capacity questionnaire form on which he opined that Plaintiff could sit

for only 20 minutes, stand for ten, and walk for one block.  (AR 428-32.)  He also reported that Plaintiff suffered from fibromyalgia.  (AR 428.)  The ALJ rejected Dr. Beamer's findings because they were not supported by his treatment notes.  (AR 29.)  He pointed out, for example, that Dr. Beamer repeatedly noted that Plaintiff was doing well and that he wanted to reduce her pain medications, citing to Dr. Beamer's notes.  (AR 29.)  He also noted that, though Dr. Beamer reported that Plaintiff exhibited multiple tender spots, supporting a diagnosis of fibromyalgia, Dr. Beamer's treatment notes never mentioned this fact.  (AR 29.)

The record supports the ALJ's findings with regard to Dr. Beamer (AR 225, 295-96) and, therefore, her rejection of Dr. Beamer's opinion will be upheld.  *See Thomas*, 278 F.3d at 957.

B. <u>The Credibility Determination</u>

Plaintiff testified at the hearing that her physical and psychological maladies prevented her from maintaining a job. (AR 61-75.)  The ALJ rejected this testimony to the extent that it was inconsistent with his finding that Plaintiff could perform light work because it was not supported by the medical record.  (AR 29.)  Plaintiff argues that the ALJ erred in doing so.  For the following reasons, the Court concludes that remand for further consideration is warranted on this issue.

ALJs are tasked with judging the credibility of witnesses, including the claimants.  In making credibility determinations, they may employ ordinary credibility evaluation techniques. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  Where, however, a claimant has produced objective medical evidence of

an impairment which could reasonably be expected to produce the alleged symptoms and there is no evidence of malingering, the ALJ can only reject the testimony for specific, clear, and convincing reasons, *id.* at 1283-84, that are supported by substantial evidence in the record. *Thomas*, 278 F.3d at 959.

The ALJ found that Plaintiff was not credible, in part, because she testified that she suffered from side effects from her medications, including Lyrica (AR 65), and the record did not reflect any complaints of significant side effects. (AR 29.) The record supports this finding. Plaintiff was on Lyrica when she was being treated by Dr. Beamer and he regularly noted that she did not suffer from any significant side effects from the medication. (AR 225, 226, 286.) Plaintiff testified at trial that she did. (AR 65.) Thus, the ALJ was at liberty to question her testimony on that ground.

The ALJ also questioned Plaintiff's testimony because she found that Plaintiff's claims about the severity of her psychological problems were inconsistent with the medical records. (AR 29.) The ALJ noted that, though Plaintiff suffered from severe emotional problems in January 2009, when she checked herself into a hospital, those problems were caused by family issues and work stress and subsided over time. (AR 29.) The ALJ pointed out that subsequent treatment notes indicated that Plaintiff had had a good response to medication and her doctors were optimistic about her prognosis, citing Dr. Ruths' June 2009 opinion and Dr. Beamer's chart notes. (AR 29.)

In doing so, the ALJ ignored Dr. Ruths' 2011 report that Plaintiff was not doing well. As explained above, the Court has

11

remanded the case back to the ALJ to reconsider this assessment as well as Dr. Ruths' records after June 2009.  For this same reason, the Court concludes that the ALJ should reexamine the credibility issue in this new light.[2]

IV. CONCLUSION

For these reasons, the ALJ's decision is reversed and the case is remanded to the Agency for further proceedings consistent with this Memorandum Opinion and Order.[3]

IT IS SO ORDERED.

DATED:  August 29, 2014

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Social Security\GARNER 3159\Memorandum Opinion and Order.docx

---

[2] Though the Court has concluded that the ALJ was justified in questioning Plaintiff's testimony based on the fact that she claimed that she suffered from side effects from her medications, which was not supported by the record, it is not clear that the ALJ would have rejected Plaintiff's testimony on that ground alone.  As such, remand is warranted.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (holding error by ALJ in credibility determination is harmless "[s]o long as there remains substantial evidence supporting the ALJ's conclusions on . . . credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion.").

[3] Plaintiff has requested that the Court remand the case to the Agency for an award of benefits.  The Court recognizes that it has the authority to do so but finds that this case does not merit this relief.  First, there are questions as to the validity of Dr. Ruths' conclusion that Plaintiff's mental/emotional problems greatly limit her ability to function.  Second, the issue of Plaintiff's credibility is in doubt and must be developed further on remand.

12